# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

PAUL DAVID HITE,

    Defendant.

Criminal No. 12-65 (CKK)

## MEMORANDUM OPINION
(October 9, 2012)

Defendant Paul David Hite is charged by superseding indictment with two counts of attempted coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b). Superseding Indictment, ECF No. [10], at 1-2. The Defendant previously moved to dismiss both counts of the superseding indictment on the grounds that the statute prohibits attempted enticement by way of direct communications with a minor only, but does not prohibit attempted enticement through an adult intermediary. *See generally* Def.'s Mot. to Dismiss, ECF No. [11]. The Court denied the Defendant's motion, but granted the Defendant an opportunity to further develop the constitutional issues that were raised but not effectively briefed in his initial motion. 6/30/12 Mem. Opin., ECF No. [15], at 30-31. Presently before the Court is the Defendant's [16] Supplemental Memorandum in Support of His Motion to Dismiss Counts One and Two of the Superseding Indictment. Upon consideration of the parties' pleadings,[1] the relevant legal standards, and the record as a whole, the Court finds Defendant's constitutional arguments lack merit. Accordingly, the Defendant's motion to dismiss is DENIED.

---

[1] See Def.'s Suppl. Mem., ECF No. [16]; Gov't's Opp'n, ECF No. [17]; and Def.'s Suppl. Reply, ECF No. [18].

# I. BACKGROUND

The Court detailed the factual allegations against the Defendant at length in its initial Memorandum Opinion, 6/30/12 Mem. Opin. at 1-13, and that discussion is incorporated by reference into this Memorandum Opinion. In short, the Defendant initiated a conversation via instant message with District of Columbia Metropolitan Police Department Detective Timothy Palchak, who posed as "JP" in a chat room on a social networking site. *Id.* at 2. The Government alleges that over the course of several days, the Defendant and JP had a series of sexually explicit conversations through instant message and over the telephone regarding JP's three year old nephew and JP's girlfriend's twelve year old daughter. *Id.* at 2-13. The parties discussed meeting in person to engage in sexual activity with both the three-year old and twelve-year old. *E.g.*, *id.* at 6-7. The Defendant and JP arranged for the Defendant to travel to JP's apartment in the District of Columbia on Friday, February 17, 2012. *Id.* at 9. JP explained that his nephew would arrive on Saturday, and the parties had explicit discussions regarding the sexual acts they planned to engage in with JP's nephew. *Id.* During later discussions regarding logistics for the meeting, the Defendant claimed that all of their prior conversations were mere fantasies, and that they were simply two consenting adults meeting without the intent to engage in any illegal activity. *E.g.*, *id.* at 12. On Friday February 17, the Defendant indicated he was paranoid about the planned meeting, and stated he needed "a little bit more confirmation" before traveling to JP's apartment. *Id.* The Government filed a criminal complaint against the Defendant that same day, and the Defendant was arrested on February 21, 2012. *Id.* at 13.

In his initial motion to dismiss, the Defendant argued that as a matter of law, the Government could not show the Defendant acted with the requisite intent to persuade, induce, entice, or coerce a minor to engage in illicit sexual activity, or that the Defendant had taken a

substantial step towards commission of the offense proscribed in Section 2422(b). The Defendant specifically argued, in relevant part, that Section 2422(b) prohibits only direct communication between a defendant and a minor with the intent to persuade the minor to engage in illicit sexual activity, but does not criminalize communication between a defendant and another adult. In the alternative, the Defendant asserted that at most, Section 2422(b) prohibits communications between a defendant and the parent or legal guardian of a minor made with the intent to persuade the minor to engage in illicit sexual activity.

The Court rejected both arguments, holding that under the plain language of the statute "[i]t is sufficient that the defendant communicate with an adult intermediary with the intent that the end result be the enticement of the minor to engage in illegal sexual activity." 6/30/12 Mem. Opin. at 18.[2] As for the relationship between the adult intermediary and the minor, the Court explained that that the relevant question is whether the defendant thought the adult intermediary had sufficient influence or control over the minor to succeed in enticing the desired illicit behavior. *Id.* at 20-21. Although other courts have found a parent/guardian relationship to be sufficient to show such influence or control, the adult intermediary did not necessarily have to be a parent or guardian in order to have such influence or control. *Id.* The Court left it to the jury to determine whether the Defendant thought JP had sufficient influence or control such that the

---

[2] In a rather blatant attempt to re-argue his initial motion to dismiss beyond his constitutional claims, the Defendant cites a number of statutes purportedly interpreted to include only "direct" conduct even though the word "direct" is absent from the statute. Def.'s Suppl. Mem. at 10 n1. The Court declines to waste its and the parties' time distinguishing a litany of non-criminal statutes, particularly in light of the D.C. Circuit's opinion in *United States v. Love*, 593 F.3d 1 (D.C. Cir. 2010), which employed the same approach used by the Court in its prior opinion to interpret strikingly similar language in the United States Sentencing Guidelines. *Id.* at 8.

Defendant had the requisite intent to persuade the minors in question. *Id.* at 21.[3]

The Defendant purported to raise a constitutional challenge to Section 2422(b), but did not articulate the argument until his reply brief, at which time the Government had no opportunity to respond. 6/30/12 Mem. Opin. at 29-30. Pursuant to the Court's July 2, 2012 Minute Order, the Defendant filed the present supplemental memorandum regarding his constitutional arguments.

### III. DISCUSSION

Although the Defendant's supplemental pleadings are not the model of clarity---and for the most part fails to fully articulate the Defendant's theory until the reply brief---the thrust of the Defendant's argument appears to be that Section 2422(b) is unconstitutional for two reasons: (1) the statute criminalizes speech that is not imminently related to the harmful conduct the statute seeks to prevent; and (2) the statute provides insufficient notice to the public and law enforcement as to what type communication is prohibited. In light of these arguments, the Defendant urges the Court to adopt one of two proposed alternative constructions of the statute pursuant to the doctrine of "constitutional avoidance": one that criminalizes only communications made directly with a minor, and one that criminalizes only communications made directly with a minor *or* with the minor's parent or guardian. Finding no constitutional infirmities with the statute, the Court declines the Defendant's invitation to revisit the Court's earlier opinion and adopt one of his proposed limits on the statute.

---

[3] Defendant's citation to a law review note critical of a similar decision notwithstanding, Def.'s Suppl. Mem. at 2 n1., across four separate briefs, the Defendant has been unable to cite a single case in which any federal court has rejected the interpretation of the statute employed by the Court. The Court is treading on new ground in this Circuit, but does so consistent with extensive case law from other Circuits, which have universally rejected similar constitutional challenges to Section 2422(b).

*A.     Direct/Imminent Connection to Harmful Activity*

Although framed as a vagueness argument, the Defendant's first contention is that the statute is unconstitutionally overbroad.

> The overbreadth and vagueness doctrines are related but distinct. A vague law denies due process by imposing standards of conduct so indeterminate that it is impossible to ascertain just what will result in sanctions; in contrast, a law that is overbroad may be perfectly clear but impermissibly purport to penalize protected First Amendment activity.

*Hastings v. Judicial Conference of the U.S.*, 829 F.2d 91, 105 (D.C. Cir. 1987). "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002).

Numerous Courts of Appeals have rejected overbreadth challenges to Section 2422(b). *E.g.*, *United States v. Gagliardi*, 506 F.3d 140, 147-48 (2d Cir. 2007); *United States v. Tykarsky*, 446 F.3d 458, 473 (3d Cir. 2006); *United States v. Meek*, 366 F.3d 705, 721 (9th Cir. 2004); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000). The Defendant attempts to distinguish these cases on the grounds that none of them addressed the use of an adult intermediary as alleged in this case. The thrust of the Defendant's argument is that unless a defendant communicates directly with a minor---or with the minor's parent or guardian---Section 2422(b) "criminalize[s] speech that may have little direct and immediate causal relation to the harm that such criminalization is intended to prevent." Def.'s Suppl. Mem. at 12-13; *see also id.* at 9. Defendant's argument is misplaced.

First, as the Second, Third, and Ninth Circuits noted, Section 2422(b) criminalizes the *act* of attempting to entice a minor, not speech. *Gagliardi*, 506 F.3d at 148 ("The statute punishes the *act* of enticing or attempting to entice a minor when it is knowingly done; it does not

implicate speech."); *Tykarsky*, 446 F.3d at 473 ("Section 2422(b) regulates only conduct, not speech."); *Meek*, 366 F.3d at 721. "[T]here is no otherwise legitimate speech jeopardized by § 2422 because the statute only criminalizes conduct, *i.e.* the targeted inducement of minors for illegal sexual activity. Here, speech is merely the vehicle through which a pedophile ensnares the victim." *Meek*, 366 F.3d at 721. For that reason, neither *Gooding v. Wilson*, 405 U.S. 518 (1972), nor *Free Speech Coalition v. Ashcroft*, 535 U.S. 234 (2002), are relevant; Section 2422(b) does not criminalize protected speech as a means to prohibit certain conduct, it directly prohibits certain conduct. The Defendant's reliance on *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008), for this same argument is inapposite. The Seventh Circuit in *Gladish* did not address a constitutional challenge to Section 2422(b), but rather opined on the requirement that the defendant take a "substantial step" toward completion of the offense to be found guilty of attempt. What constitutes a substantial step for purposes of attempted enticement is irrelevant to the question of whether or not the statute criminalizes a substantial amount of protected speech.

Second, to the extent Section 2422(b) in fact proscribes speech but not conduct, that speech is not protected by the First Amendment. *Bailey*, 228 F.3d at 639. "Offers to engage in illegal transactions are categorically excluded from First Amendment protection." *United States v. Williams*, 553 U.S. 285, 297 (2008). In *Williams*, the Supreme Court found that "offers to provide or requests to obtain child pornography are categorically excluded from the First Amendment." *Id.* at 299. The *Williams* Court explicitly found that the criminalization of certain speech (an offer or request for child pornography) made with a particular intent (that the subject of the proposed transaction depict real children) was not unconstitutionally overbroad. *Id.* at 303. Section 2422(b), which proscribes only speech made with the intent to actually induce a minor to engage in illicit sexual activity, is similarly "well within constitutional bounds." *Id.* at

299.

The Government noted in its opposition that in terms of the "direct connection" to harmful conduct, there is no basis to distinguish between communications with an adult intermediary that is the parent/guardian of a minor, and communications with an adult intermediary that has some other relationship with a minor. The only explanation offered by the Defendant comes in a footnote in the Defendant's reply, wherein he argues that

> The difference is that in the absence of such a relationship of control between the adult recipient of the communication and the minor who the sender of the communication is intending to persuade, induce, entice or coerce, there is no reason for fear that the speech will result in imminent conduct that can constitutionally be proscribed. When a speaker attempts directly to persuade, induce, entice or coerce a minor, there is the direct imminent connection between the speech and unlawful conduct of sexual relations with the minor. . . . A communication with a minor's adult babysitter, teacher, or neighbor that is intended to persuade, induce, entice or coerce that adult to procure the minor for unlawful sexual relations may be odious, but it is nonetheless speech that lacks a direct imminent connection to the unlawful conduct that speaking to the minor's parent would presumably have.

Def.'s Suppl. Reply at 12 n.1. This argument assumes the fact the Defendant must prove in order to show the statute is overbroad. An adult babysitter's communication with a minor may have "a direct imminent connection to the unlawful conduct," while a conversation with an estranged parent may not. Courts have often found that the parent/guardian relationship is sufficient to show a certain level of control over a minor, but that legal relationship is by no means necessary to show that same level of influence or control. 6/30/12 Mem. Opin. at 20-21; *cf. United States v. Nitschke*, 843 F. Supp. 2d 4, 13-14 (D.D.C. 2011) (noting the detective posing as the adult intermediary "did not claim to be the minor's parent or guardian, which many cases have presumed establishes sufficient influence or control over a minor") (citations

omitted).[4]  The Eleventh Circuit in *United States v. Muentes*, 316 F. App'x 921 (11th Cir. 2009), specifically upheld the defendant's conviction under Section 2422(b) for attempting to entice a minor through communications with the minor's pimp.  *Id.* at 924.  The *Muentes* court explained that "although Muentes negotiated with a purported pimp rather than a purported father, this distinction does not change the outcome. By negotiating with a purported pimp, an adult who presumably exercised influence over prospective minor prostitutes, Muentes attempted to stimulate or cause a minor to engage in sex with him."  *Id.*  It is the level of influence the relationship provides, not the legal relationship between the intermediary and the targeted minor, that is relevant to whether or not the defendant acted with the requisite intent.  Ultimately, whether or not a defendant thought an adult intermediary---be it a parent, babysitter, or other adult---had sufficient influence or control to effect the attempted enticement is a question of fact for the jury.  *See infra*.

B.      *Vagueness Challenge*

The Defendant's second challenge, also framed as a vagueness challenge, alleges that the public lacks adequate notice of what conduct is criminalized by the statute by "leaving it to the jury to decide whether Dr. Hite intended to use the Internet to persuade the minor via the adult intermediary and believed the intermediary possessed sufficient control over the minor that he could induce the desired behavior."  Def.'s Suppl. Mem. at 14.  This issue, once again, is not one of vagueness.  "What renders a statute vague is not the possibility that it will sometimes be

---

[4]    Contrary to the Defendant's assertion, the Court's opinion is entirely consistent with that of Judge James E. Boasberg in *Nitschke*.  Judge Boasberg found in *Nitschke* that "[t]here is nothing in these communications to suggest that Defendant would think he could induce the minor through [the adult intermediary's] influence or control."  843 F. Supp. 2d at 13-14.  In its June 30, 2012 Memorandum Opinion, the Court likewise noted that the Government would have to prove that Defendant Hite thought JP could induce the minors through JP's influence or control.

difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Williams*, 553 U.S. at 306.

> Whether someone held a belief or had an intent is a true-or-false determination, not a subjective judgment such as whether conduct is 'annoying' or 'indecent.' . . . To be sure, it may be difficult in some cases to determine whether these clear requirements have been met. But courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.

*Williams*, 553 U.S. at 306.

The intent requirement for Section 2422(b) in this case is clear: the Government must prove beyond a reasonable doubt that the Defendant communicated with "JP" with the intent that the end result be the enticement of the minors to engage in illegal sexual activity. As part of this element, the Government must show the Defendant thought JP had sufficient influence or control over the fictitious minors to succeed in enticing the desired illicit behavior. Whether the Government can prove that fact remains to be seen, but at the point it is clear what fact the Government must show, the statute is not vague. Thus, the Defendant's contention that Section 2422(b) "gives law enforcement officials 'virtually unfettered discretion' has no merit. No more here than in the case of laws against fraud, conspiracy, or solicitation." *Williams*, 553 U.S. at 306. Congress could have drafted a narrower statute, that is, by limiting Section 2422(b) to "direct" communication with a minor, or communications with the minor's parent or guardian. Nevertheless, the route Congress took in drafting Section 2422(b) as it exists today is not unconstitutional.

For the first time in his reply, the Defendant asserts a new vagueness challenge, arguing that the plain meaning of "persuades, induces, entices, or coerces" does not place the public on notice that "indirect" communication with a minor by way of an adult intermediary other than a

parent/guardian, with the requisite intent, is criminalized. Numerous Courts of Appeals have rejected similar vagueness claims, noting that "persuade," "induce," "entice," and "coerce" have their plain and ordinary meanings, which are "sufficiently precise to give a person of ordinary intelligence fair notice as to what is permitted and what is prohibited." *Tykarsky*, 446 F.3d at 473; *see also Gagliardi*, 506 F.3d at 147 ("The words attempt, persuade, induce, entice, or coerce, though not defined in the statute, are words of common usage that have plain and ordinary meanings ... sufficiently definite that ordinary people using common sense could grasp the nature of the prohibited conduct."); *United States v. Panfil*, 338 F.3d 1299, 1301 (11th Cir. 2003). The Court agrees. The words "persuade," "induce," "entice," and "coerce" have their plain and ordinary meanings, which include indirect communications with a minor, providing clear notice of what conduct is prohibited by the statute and preventing arbitrary enforcement. 6/30/12 Mem. Opin. at 15-17.

C.     *Constitutional Avoidance*

The Defendant devotes most of his Reply brief to describing the doctrine of constitutional avoidance and defending the plausibility of his proposed alternative constructions of the statute. The crux of the Defendant's argument in support of his claim that the statute is ambiguous is that if two jurists (this Court and Judge Brown) can read the statute two different ways, the statute by definition must be ambiguous. If that were true, then the Supreme Court could (and would) never find any statute has a plain meaning in the face of a disagreement amongst the Courts of Appeals. Disagreements amongst learned jurists do not demonstrate the statute has no "plain meaning." *See*, *e.g.*, *Abbott v. United States,* 131 S.Ct. 18, 23 (2010) (finding 18 U.S.C. § 924(c) was not ambiguous, despite differing interpretations by the Courts of Appeals). As explained above, and in the Court's prior opinion, the plain text of Section 2422(b) is unambiguous, and

10

neither vague nor overbroad. "A clear statute and a weak constitutional claim are not a recipe for successful invocation of the constitutional avoidance canon." *Cubaexport v. Dep't of Treasury*, 638 F.3d 794, 801 (D.C. Cir. 2011). The constitutional avoidance canon is not, as the Defendant claims, triggered by the existence of "multiple plausible readings of the statute."[5] Def.'s Suppl. Reply at 2. The Court does not look beyond the plain text of the statute unless the Defendant raises a "serious" constitutional question. *Clark v. Martinez*, 543 U.S. 371, 381 (2005). The Defendant's supplemental briefing failed to raise such a serious question. Accordingly, the canon of constitutional avoidance provides no basis for the Court to reconsider its earlier decision adopting the plain reading of the statute at issue. *Rural Cellular Ass'n v. Fed. Commc'ns Comm'n*, 685 F.3d 1083, 1091-92 (D.C. Cir. 2012).

//

//

//

//

//

//

//

//

//

//

//

---

[5] Nor does the Court take any position on the plausibility of Defendant's proposed alternative interpretations of the statute.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds the Defendant's constitutional challenges are unpersuasive.  Section 2422(b) is not overbroad, as it criminalizes only conduct, and does not suppress any protected speech.  Furthermore, Section 2422(b) is not void for vagueness; as numerous Courts of Appeals have found, the plain and ordinary meaning of the statute provides clear notice of what conduct is prohibited and what intent is required.  Whether the Defendant acted with the requisite intent is a factual question for the jury to decide, not a vague aspect of the statute.  With a clear statute and no serious constitutional concerns, the canon of constitutional avoidance is inapplicable, and the Court does not reach the Defendant's proposed alternative constructions of Section 2422(b).  Accordingly, the Defendant's motion to dismiss is DENIED.

An appropriate Order accompanies this memorandum opinion.

_/s/_
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE
